# STATE OF MICHIGAN

# COURT OF APPEALS

DENIS PRISHTINA,

　　　　　　Plaintiff,

v

AUTO CLUB INSURANCE ASSOCIATION,

　　　　　　Defendant-Appellee,

and

AUTO-OWNERS INSURANCE COMPANY,

　　　　　　Defendant-Appellant.

UNPUBLISHED
March 10, 2015

No. 318912
Wayne Circuit Court
LC Nos. 12-001413-NF
　　　　　12-008166-NF

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Auto-Owners Insurance Company ("Auto-Owners"), appeals as of right a stipulated order for dismissal in this no-fault insurance action, which dismissed with prejudice plaintiff's suit against Auto-Owners after the parties agreed to the amount recoverable by plaintiff. However, the issue raised by Auto-Owners on appeal is related to the trial court's earlier, nonfinal order that denied Auto-Owners' motion for summary disposition and declared it first in order of priority for purposes of plaintiff's no-fault claim. We reverse.

This case arises from the injuries sustained by plaintiff during a motorcycle accident. On June 18, 2011, plaintiff was driving a motorcycle owned by a friend on I-96 in Detroit, Michigan, when a Crown Victoria, operated by Bryant Lee, moved into plaintiff's lane and collided with the motorcycle. At the time of the accident, plaintiff resided at his parents' residence, and his father had an ACIA insurance policy on the vehicles that his father owned. Bryant, the owner and registrant of the Crown Victoria, did not maintain an insurance policy on the vehicle. However, Odell Lee, Bryant's father with whom Bryant resided, maintained his own Auto-Owners insurance policy on the vehicles that he owned. The trial court denied Auto-Owners' motion for summary disposition and granted summary disposition in favor of ACIA based on its finding that Auto-Owners was first in priority for the payment of plaintiff's personal injury protection ("PIP") benefits.

-1-

On appeal, Auto-Owners argues that the trial court erred in denying its motion for summary disposition and granting summary disposition in favor of ACIA because Auto-Owners was not the "insurer" of Bryant under the language of Odell's insurance policy, such that Auto-Owners is not responsible for the payment of plaintiff's PIP benefits under MCL 500.3114(5). We agree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). When reviewing a motion filed under MCR 2.116(C)(10), this Court may only consider, in the light most favorable to the party opposing the motion, "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11-12; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 4-5; 763 NW2d 1 (2008).

Additionally, "issues of statutory construction are questions of law, which [this Court] review[s] de novo." *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 253; 819 NW2d 68 (2012). Likewise, this Court reviews de novo, as a question of law, "the construction and interpretation of an insurance contract." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). The Michigan Supreme Court has stated the following regarding the goals of contract and statutory interpretation:

> The fundamental goal of contract interpretation is to determine and enforce the parties' intent by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement. The goal of statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. [*Dobbelaere v Auto Owners Ins Co*, 275 Mich App 527, 529-530; 740 NW2d 503 (2007) (internal quotation marks and citations omitted).]

Michigan's no-fault insurance act establishes the priority of insurers responsible for an individual's no-fault PIP benefits. *Corwin*, 296 Mich App at 254-255. In general, "under MCL 500.3101(1) and MCL 500.3114(1), an individual must seek no-fault benefits from his own insurer unless one of the exceptions enumerated in MCL 500.3114(2), (3), or (5) applies." *Farmers Ins Exch v Farm Bureau Ins Co*, 272 Mich App 106, 111; 724 NW2d 485 (2006). MCL 500.3114(1) provides:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. A

personal injury insurance policy described in section 3103(2) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motorcycle accident. When personal protection insurance benefits or personal injury benefits described in section 3103(2) are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits and is not entitled to recoupment from the other insurer.

MCL 500.3114(5)—which, as the parties agree, is the priority provision applicable to this case because the underlying accident at issue included "[a] person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle"—provides the following order of priority for the payment of PIP benefits:

> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident. [MCL 500.3114(5).]

ACIA expressly acknowledges that it "is the § 3114(5)(c) 'motor vehicle insurer of the operator [Plaintiff Prishtina] of the motorcycle involved in the accident.' " However, the parties agree that the dispositive issue in this case is whether Auto-Owners was the "insurer" of Bryant, the *operator* of the motor vehicle involved in the accident, under Odell's Auto-Owners insurance policy, such that Auto-Owners is first in priority for the payment of plaintiff's PIP benefits under MCL 500.3114(5)(b).

This Court previously acknowledged that the no-fault act does not define the word "insurer" and quoted the following definition of "insurer" from *Black's Law Dictionary* (7th ed): "[o]ne who agrees, by contract, to assume the risk of another's loss and to compensate for that loss." *Amerisure Ins Co v Coleman*, 274 Mich App 432, 435-436; 733 NW2d 93 (2007) (internal quotation marks omitted; alteration in original). Accordingly, this Court concluded that whether the insurer of a no-fault insurance policy constitutes the "insurer" of a relative for purposes of MCL 500.3114 depends on the specific language of the insurance policy at issue in the case, *not* on the fact that the relative may be entitled to PIP benefits himself by operation of law under MCL 500.3114(1). *Dobbelaere*, 275 Mich App at 532-533. Although this Court specifically interpreted MCL 500.3114(4) in *Dobbelaere*, there is nothing in the language of MCL 500.3114(5) that indicates that a different definition or interpretation of "insurer" should be employed with regard to MCL 500.3114(5). Likewise, this Court has previously held that "[a] phrase that is found in multiple sections throughout the no-fault act should be consistently construed," *Bronson Methodist Hosp v Allstate Ins Co*, 286 Mich App 219, 227; 779 NW2d 304,

(2009), and that "[t]erms contained in the no-fault act are read . . . in the context of the no-fault act as a whole," *Frierson v West American Ins Co*, 261 Mich App 732, 734; 683 NW2d 695 (2004).

Thus, we must examine the terms of the no-fault coverage of the Auto-Owners insurance policy at issue in this case in order to determine whether Auto-Owners was the insurer of Bryant at the time of the accident and, therefore, whether Auto-Owners is responsible for plaintiff's PIP benefits. *Dobbelaere*, 275 Mich App at 532-533. "When reviewing an insurance policy dispute, an appellate court looks to the language of the insurance policy and interpret[s] the terms therein in accordance with Michigan's well-established principles of contract construction." *Besic v Citizens Ins Co*, 290 Mich App 19, 24; 800 NW2d 93 (2010) (internal quotation marks and citations omitted; alteration in original). Accordingly, this Court looks to the plain language of an insurance policy when interpreting its meaning and scope of coverage. *Busch v Holmes*, 256 Mich App 4, 7-8; 662 NW2d 64 (2003). Consistent with the principle that "an insurance contract must be enforced in accordance with its terms," a court is not permitted to "hold an insurance company liable for a risk that it did not assume." *Henderson*, 460 Mich at 354. "[U]nless a contract provision violates [the] law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005).

With regard to the Auto-Owners endorsement at issue in *Dobbelaere*, this Court found:

[T]he policy at issue here does not define who is an insured for purposes of the no-fault endorsement, and we are unable to discover anything in the plain language of the policy's declaration or general verbiage to indicate an intent by the parties to that contract to render either David Jones[, the named insured's spouse,] or David Jones II[, the resident relative of the named insured and the name insured's spouse,] a contractual insured. [*Dobbelaere*, 275 Mich App at 534.]

Just as this Court concluded in *Dobbelaere*, 275 Mich App at 534, the Auto-Owners no-fault insurance endorsement at issue in this case does not explicitly define who is insured under the policy. The endorsement provides the following definition of "named insured": "**Named Insured** means the first person or organization in the Declarations." Only Odell is listed on the "Automobile Policy Declarations," so he is the "named insured" under the no-fault endorsement. Likewise, the declaration pages include no reference to Bryant or Bryant's Crown Victoria; only Odell's name and two vehicles, a Mercury Sable and a Ford F-150, are listed. However, this Court has held that it is not necessary for an owner, registrant, or operator of a vehicle to be listed as a "named insured" in order to be covered by an insurance policy if the other terms of the policy indicate that the individual is "insured." *Amerisure*, 274 Mich App at 437. As such, we must examine the other terms of the policy to determine whether Auto-Owners was Bryant's "insurer" for purposes of MCL 500.3114(5).

ACIA asserts, and the trial court agreed, that the definition of "relative" included in the no-fault endorsement indicated that Bryant was covered by the policy. The endorsement states:

**14. Relative** means:

> **a.** The **named insured's** spouse; and
>
> **b.** Any other person who resides with and is related to the **named insured** by blood, marriage, or adoption. **Relative** includes a ward or foster child who resides with the **named insured.**

However, despite the inclusion of this definition, the endorsement does not include any language indicating that a relative, as defined in the policy, is "insured" under the policy. Likewise, contrary to the trial court's reasoning, it appears that the mere inclusion of this definition is insufficient to demonstrate that Odell and Auto-Owners *intended* to render Bryant a contractual "insured" under the policy. *Dobbelaere*, 275 Mich App at 529-530.

Furthermore, the "coverage" section under "Section II – Personal Injury Protection" also includes no indication that a resident relative is an "insured" under the policy. Before listing the specific types of PIP benefits that are covered by the policy, the endorsement states:

**1. COVERAGE**

> Subject to the provisions of this endorsement and of the policy to which this endorsement is attached, **we** will pay personal injury protection benefits to or on behalf of an **injured person** for accidental **bodily injury** arising out of the ownership, operation, maintenance, or use of a **motor vehicle** as a **motor vehicle**, subject to the provisions of Chapter 31 of the Michigan Insurance Code. Ownership, operation, maintenance, or use of a **motor vehicle** as a **motor vehicle** means that the involvement of the **motor vehicle** in the **bodily injury** was directly related to the transportation function of the **motor vehicle.**

Likewise, as explained further below, the reference to the no-fault act in the coverage section of the endorsement does not, on its own, demonstrate that Auto-Owners is the "insurer" of Bryant. Under MCL 500.3114(1), an *injured* resident relative of a person named in an insurance policy is entitled to receive PIP benefits under that policy except as provided in the statute; MCL 500.3114(1) does not provide that the insurance provider is automatically the "insurer" of a resident relative with respect to third parties when the resident relative is not injured. See *id*. at 532-533 ("However, the fact that an individual might derivatively claim PIP benefits through a named insured under MCL 500.3114(1) does not render the policy issuer the "insurer" of that individual for purposes of MCL 500.3114(4)."). Thus, given that this Court may not "hold an insurance company liable for a risk that it did not assume," *Henderson*, 460 Mich at 354, the language of the policy indicates that Bryant was not a contractual insured under the no-fault endorsement.

Moreover, the language of the policy's general insuring agreement further supports the conclusion that Odell and Auto-Owners did not intend to include Bryant as a contractual insured. *Dobbelaere*, 275 Mich App at 534. The first paragraph states, "The attached Declarations describe the **automobile(s) we** insure and the Coverages and Limits of Liability for which **you** have paid a premium. **We** agree to insure the described **automobile(s)** for those Coverages and

-5-

Limits of Liability subject to the terms and conditions of this policy." The agreement defines "relative" as "a person who resides with **you** and who is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with **you."** "You or your" is defined as "the first named insured shown in the Declarations and if an individual, **your** spouse who resides in the same household." "Your automobile" is defined as "the **automobile** described in the Declarations." The agreement states the following with regard to bodily injury and property damage liability coverage:

> **We** will pay damages for **bodily injury** and **property damage** for which **you** become legally responsible because of or arising out of the ownership, maintenance or use of **your automobile** . . . as an **automobile. We** will pay such damages:
>
>> (1) on **your** behalf;
>>
>> (2) on behalf of any **relative** using *your automobile* (that is not a **trailer)** . . . ;

Thus, it is clear that the general coverage applied to damages for which Odell became legally responsible on Bryant's behalf *as long as Bryant was using one of Odell's automobiles*, as described in the declarations, which was not the case here. The "Other Automobiles Covered" section also includes no indication that the policy extended to Bryant or Bryant's Crown Victoria. Further, it is clear that neither Bryant nor Bryant's Crown Victoria, which Bryant owned, were covered under the extensions of bodily injury and property damage liability coverage available under the "Individual Named Insured" section of the agreement:

> a. The Liability Coverage provided for **your automobile** . . . also applies to an **automobile** . . . not:
>
>> (1) owned by or furnished or available for regular use to **you** or anyone living with **you**. However, **we** will cover **your** liability for **your** use of an **automobile** . . . owned by or furnished for the regular use of a relative.

* * *

> b. *We extend this coverage only:*
>
>> (1) to **you**;
>>
>> (2) *to **relatives** who do not own an **automobile** . . . ; and*
>>
>> (3) to anyone legally responsible for the use of the automobile . . . by the persons in (1) and (2) above.
>
> c. **We** do not cover:
>
>> (1) *the owner of the **automobile** . . . .*

Accordingly, there is no indication that Odell and Auto-Owners intended to include Bryant as an insured under the insurance policy. *Id.* at 529-30.

Thus, because the "contract language is neither ambiguous, nor contrary to the no-fault statute, the will of the parties, as reflected in their agreement, is to be carried out, and . . . the contract [must be] enforced as written." *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002). Based on the terms of the Auto Owners insurance policy at issue in this case, Auto-Owners was not the "insurer" of Bryant under MCL 500.3114(5)(b). As a result, ACIA, as the "insurer of the operator of the motorcycle involved in the accident," is first in priority for the payment of plaintiff's PIP benefits pursuant to MCL 500.3114(5)(c). Accordingly, because reasonable minds could not differ regarding whether Auto-Owners or ACIA is first in priority based on the terms of the Auto-Owners insurance policy, *Allison*, 481 Mich at 425, the trial court erroneously denied Auto-Owners' motion for summary disposition and improperly granted summary disposition in favor of ACIA. *Latham*, 480 Mich at 111.

ACIA'S ALTERNATIVE BASIS FOR AFFIRMANCE

Alternatively, ACIA asserts that the Auto-Owners policy at issue in this case also compels the conclusion that Auto-Owners was Bryant's "insurer" because it incorporates by reference MCL 500.3114(1), which "precisely defines who is insured by a no-fault PIP policy and therefore who is that person's no-fault 'insurer.' " Further, it argues that an insurance policy's language regarding who constitutes an insured is irrelevant because the definition of "insurer" is provided by MCL 500.3114(1) and the "No-Fault Act takes precedence over any insurance policy language to the contrary." Accordingly, it contends that *Dobbelaere*, 275 Mich App 527, was wrongly decided and should be overruled because it erroneously held, based on *Amerisure*, 274 Mich App 432, that a court should determine whether a company is the insurer of an individual by examining the language of the underlying insurance policy.

As ACIA emphasizes on appeal, it is evident that MCL 500.3114(1) does provide PIP benefits on a "household basis" to a certain extent. However, it appears that ACIA overlooked the plain language of the statute, which limits these derivative "household" benefits to "*accidental bodily injury to* the person named in the policy, the person's spouse, and a relative of either domiciled in the same household." MCL 500.3114(1). Thus, while a resident relative may be eligible for PIP coverage under his family member's insurance, this coverage only applies to accidental bodily injury that occurs *to* the resident relative himself, not accidental bodily injury that occurs to a third party. MCL 500.3114(1). Likewise, the cases cited by ACIA in its brief fail to establish the broad principle articulated by ACIA, i.e., that "[t]he cases are legion in indicating that a no-fault insurer of the three types or classes of § 3114(1) household insureds . . . is their 'own insurer' . . . or 'household insurer,' and that any one of those § 3114(1) three classes of household PIP-insureds would therefore call the insurer his/her 'insurer.' " Instead, the cases cited by ACIA reiterate that a relative domiciled in the same household of a named insured is entitled to PIP benefits *when the relative himself is injured*, meaning that the insurance company providing no-fault insurance in his household is "his insurer" with regard to *his own injuries*. See, e.g., *Frierson*, 261 Mich App at 735; *Spencer v Citizens Ins Co*, 239 Mich App 291, 301; 608 NW2d 113 (2000); *Michigan Mut Ins Co v Farm Bureau Ins Group*, 183 Mich App 626, 633; 455 NW2d 352 (1990) ("The '*injured person's* personal insurer' is, of course, the insurance company providing no-fault insurance in his household which was

-7-

purchased by an 'owner or registrant of a motor vehicle.' " [emphasis added]). Accordingly, it appears that ACIA has erroneously expanded the principle that an *injured* individual's "own insurer" includes the insurance company that provides no-fault coverage in his household, mistakenly concluding that the insurer of the person named in the policy is also the "insurer" of the relative domiciled in the household in all situations, even when the relative is not injured. We decline to adopt ACIA's understanding of MCL 500.3114(1) because it is not supported by the plain language of MCL 500.3114(1) and the relevant case law. See *McElhaney ex rel McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488, 493; 711 NW2d 795 (2006) ("The first step [of statutory interpretation] is to examine the plain language of the statute itself. The Legislature is presumed to have intended the meaning it plainly expressed. If the statutory language is clear and unambiguous . . . further judicial construction is not permitted." [citations omitted]).

Thus, ACIA erroneously argues that "MCL 500.3114(1) . . . explicitly renders a no-fault PIP policy applicable to 'the person named in the policy [i.e., the policy's named insured, Odell Lee], the person's spouse, and a relative of either domiciled in the same household [Bryant Lee].' " Likewise, ACIA is misguided when it asserts that *Amerisure* and *Dobbelaere* were wrongly decided because they failed to recognize that "insurer" is defined in MCL 500.3114(1). Contrary to ACIA's argument on appeal, there is no indication that the *Dobbelaere* Court erroneously held that a court must depend on the language of an insurance policy in order to determine whether an insurance company qualifies as an individual's "insurer," and we decline ACIA's invitation to overrule *Dobbelaere*.

Reversed and remanded for entry of an order granting Auto-Owners' motion for summary disposition pursuant to MCR 2.116(C)(10) and denying ACIA's motion for summary disposition. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly